**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2014

(Argued:  March 6, 2015        Decided: July 15, 2015)

Docket No. 14-1473-cv

_____

M.O. and G.O., individually and on behalf of D.O., a minor,

*Plaintiffs-Appellants*,

- v. -

NEW YORK CITY DEPARTMENT OF EDUCATION,

*Defendant-Appellee*.

_____

Before:
CALABRESI and HALL, *Circuit Judges*, and RAKOFF, *District Judge*.[*]

Appeal from a judgment of the United States District Court for the Southern District of New York (Cedarbaum, *J.*), affirming a State Review Officer's determination to deny reimbursement for a unilateral private placement under the Individuals with Disabilities Education Act.  We hold that the State Review Officer correctly determined that Defendant-Appellee New York City Department of Education provided a free appropriate public education.  The judgment of the district court is therefore AFFIRMED.  Because the decisions of the district court and State Review Officer could, however, be interpreted as requiring a child to attend physically a proposed placement school before challenging that school's ability to implement the child's individualized education plan, we further clarify that our decision in *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167 (2d Cir. 2012), imposes no such requirement.

LAWRENCE D. WEINBERG, Bloomfield, NJ, *for Plaintiffs-Appellants*.

_____

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

MARTA SOJA ROSS, *for* Zachary W. Carter, Corporation
Counsel of the City of New York, New York,
NY, *for Defendant-Appellee.*

PER CURIAM:

This Individuals with Disabilities Education Act ("IDEA") case concerns a reimbursement action for a unilateral private placement in which Plaintiffs-Appellants M.O. and G.O. challenge the adequacy of the public school proposed by Defendant-Appellee New York City Department of Education ("DOE" or "the school district") for the placement of their child during the 2011-2012 school year.[1]

## BACKGROUND

I.    Statutory and Regulatory Background

The IDEA requires states receiving federal funds to "provide 'all children with disabilities' a 'free appropriate public education[]' ('FAPE')." *Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 376 (2d Cir. 2014) (quoting 20 U.S.C. § 1412(a)(1)(A)). "A FAPE consists of special education and related services tailored to meet the unique needs

---

[1] "This opinion, dealing as it does with the IDEA and practices thereunder, is replete with acronyms." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 223 (2d Cir. 2012). We therefore find it useful to supply the below list of acronyms used in this opinion.

| | |
|---|---|
| CSE | Local Committee on Special Education |
| D.O. | Son of Plaintiffs M.O. & G.O. |
| DOE | New York City Department of Education |
| FAPE | Free Appropriate Public Education |
| G.O. | Plaintiff, father of D.O. |
| ICT | Integrated Co-Teaching |
| IEP | Individualized Education Plan |
| IHO | Impartial Hearing Officer |
| M.O. | Plaintiff, mother of D.O. |
| SRO | State Review Officer |

of a particular child, which are reasonably calculated to enable the child to receive educational benefits . . . ." *Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.*, 760 F.3d 211, 214 (2d Cir. 2014) (citations and internal quotation marks omitted). "To ensure that qualifying children receive a FAPE, a school district must create an individualized education program ('IEP') for each such child." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012) (citing 20 U.S.C. § 1414(d); *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (describing the IEP as the "centerpiece" of the IDEA system)). "The IEP is 'a written statement that sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *R.E.*, 694 F.3d at 175 (quoting *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 507-08 (2d Cir. 2006)). The IEP "must be likely to produce progress, not regression, and must afford the student with an opportunity greater than mere trivial advancement. However, it need not furnish every special service necessary to maximize each handicapped child's potential." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 224 (2d Cir. 2012) (citations, internal quotation marks, and alterations omitted).

The State of New York "has assigned responsibility for developing appropriate IEPs to local Committees on Special Education ('CSEs')." *Id.* (citation, internal quotation marks, and alterations omitted); N.Y. Educ. Law § 4402(1)(b)(1). "CSEs are comprised of members appointed by the local school district's board of education, and must include the student's parent(s), a regular or special education teacher, a school board representative, a parent representative, and others." *R.E.*, 694 F.3d at 175 (citing N.Y. Educ. Law

§ 4402(1)(b)(1)(a). In developing a particular child's IEP, "the CSE must [] be mindful of the IDEA's strong preference for 'mainstreaming,' or educating children with disabilities '[t]o the maximum extent appropriate' alongside their non-disabled peers." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 108 (2d Cir. 2007) (quoting 20 U.S.C. § 1412(a)(5)); *see also Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 132 (2d Cir. 1998).

"Parents who . . . believe that a FAPE is not being provided to their child may unilaterally enroll the child in a private school and seek tuition reimbursement from the school district" by filing what is known as a "due process complaint." *Hardison*, 773 F.3d at 376 (citations and internal quotation marks omitted); N.Y. Educ. Law § 4404(1); 20 U.S.C. § 1412(a)(10)(C)(ii). The due process complaint may challenge "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education." 20 U.S.C. § 1415(b)(6)(A). "Filing the complaint triggers an administrative procedure by which the board of education appoints an Independent Hearing Officer ('IHO') who conducts a formal hearing and fact-finding." *Hardison*, 773 F.3d at 376; N.Y. Educ. Law § 4404(1). The decision of an IHO may be appealed to a State Review Officer ("SRO"), *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379-80 (2d Cir. 2003) (citing N.Y. Educ. L. § 4404(2); 20 U.S.C. § 1415(g)), and an SRO's decision may be challenged by filing a civil action in state or federal court, *Hardison*, 773 F.3d at 376 (citing N.Y. Educ. Law § 4404(3); 20 U.S.C. § 1415(i)(2)(A)).

II.    Facts and Procedural History

D.O., the son of M.O. and G.O, is a twelve-year-old child with a speech or language impairment. D.O. attended second grade at P.S. 41, in an integrated co-teaching

("ICT")[2] class with one general education teacher and one special education teacher, during the 2010-2011 school year. He had transferred to P.S. 41 from a private Catholic school in September 2010. In December 2010, D.O.'s teachers at P.S. 41 contacted M.O. and G.O. to discuss concerns over D.O.'s educational progress and the need for a re-evaluation of D.O.'s educational needs. M.O. and G.O. opted to have D.O.'s evaluation performed privately by Dr. Herman M. Davidovicz, Ph.D.

The CSE convened in March 2011 to develop D.O.'s IEP for the 2011-2012 school year. Development of D.O.'s IEP was delayed, however, at M.O. and G.O's request to await the conclusion of D.O.'s private evaluation. M.O. and G.O provided the evaluation results to the school district in April 2011, and the CSE reconvened on June 9, 2011. The CSE meeting was attended by M.O., G.O., D.O.'s second grade general education teacher, D.O.'s second grade special education teacher, D.O.'s principal, D.O.'s school psychologist, a school district representative, a parent member, and a parent advocate. The resulting IEP classified D.O. as a student with a speech or language impairment and recommended that he repeat the second grade in a 12:1:1[3] special placement classroom in a community school. The IEP further recommended D.O.'s weekly attendance at the following: one thirty-minute session of individual speech-language therapy; two thirty-minute sessions of speech-language therapy in a group of three; eight English Language Arts ("ELA") sessions in an

---

[2] "Integrated co-teaching services means the provision of specially designed instruction and academic instruction provided to a group of students with disabilities and nondisabled students." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(g).

[3] "12:1:1" denotes a classroom with a ratio of 12 students to 1 teacher to 1 paraprofessional.

ICT class setting; one thirty-minute session of individual counseling; and one thirty-minute session of counseling in a group of five.

By Final Notice of Recommendation dated June 24, 2011, the DOE informed M.O. and G.O. that D.O. had been placed at P.S. 213 for the 2011-2012 school year. M.O. visited P.S. 213 and, in a June 29, 2011 letter, rejected this school. The letter observed, *inter alia*, that D.O.'s IEP had recommended that he repeat the second grade but P.S. 213 did not have a second grade classroom and P.S. 213's third grade classroom included both third and fourth grade students. The June 29, 2011 letter also informed the DOE that M.O. and G.O. had signed a contract and paid a deposit for the 2011-2012 school year at the Lowell School, a state-authorized private education day school, and that it was their intention to send D.O. to the Lowell School and seek tuition reimbursement if an appropriate placement was not offered. M.O. sent another letter to the DOE on July 5, 2011 cautioning that if an appropriate placement was not offered in a timely manner, she would have no alternative but to unilaterally enroll D.O. at the Lowell School and seek tuition reimbursement at public expense.

By Final Notice of Recommendation dated July 6, 2011, the DOE informed M.O. and G.O. that D.O. had been reassigned to P.S. 159 for the 2011-2012 school year. M.O. responded, in a July 11, 2011 letter, that she had called P.S. 159 but was unable to visit because the school was not in session during the summer months. The July 11, 2011 letter further advised that M.O. and G.O. could not accept D.O.'s placement at P.S. 159 because they had no idea whether the school was appropriate and that they would send D.O. to the Lowell School and seek tuition reimbursement if an appropriate placement was not offered

in a timely manner. In August 2011, M.O. and G.O. informed the DOE of their decision to enroll D.O. in the Lowell School for the 2011-2012 school year based on their belief that D.O. was not offered an appropriate placement. D.O. attended third grade at the Lowell School for the 2011-2012 school year.

In September 2011, M.O. and G.O. initiated their reimbursement action for D.O.'s unilateral placement in the Lowell School by filing a due process complaint and request for a hearing before an IHO. The due process complaint alleged that D.O.'s IEP was substantively inadequate for the following reasons: (1) the size of the proposed classroom, the student-teacher ratio, and the size of the school building were inappropriate; (2) the level of related services mandated by the IEP was inappropriate; (3) the IEP's recommendation that D.O. repeat the second grade was detrimental; (4) the IEP failed to address D.O.'s need for a language-based program; and (5) the IEP failed to address D.O.'s need for 1:1 reading support.[4]

The due process complaint also challenged the adequacy of the district's proposed placement schools, which were identified as P.S. 213 and P.S. 46. It is unclear why the due process complaint raised challenges to the adequacy of P.S. 46 rather than P.S. 159; the record contains no evidence suggesting that D.O. had ever been assigned to P.S. 46. In any event, the due process complaint alleged that M.O. and G.O. had viewed P.S. 46 on June 20, 2011 and had informed the DOE that this school was inappropriate because: (1) the size of the school building and the student-teacher ratio were inappropriate; (2) the teaching

---

[4] Counsel for Plaintiffs conceded at oral argument that D.O.'s IEP was substantively and procedurally adequate.

methodology was inappropriate because it did not address D.O.'s need for a language-based program; (3) it was not a 12-month placement; and (4) the other students in the class did not have similar needs. The due process complaint further alleged that M.O. and G.O. had viewed P.S. 213 on or after June 24, 2011 and had informed the DOE that this school was inappropriate because: (1) the size of the school building and the student-teacher ratio were inappropriate; (2) the teaching methodology was inappropriate because it did not address D.O.'s need for a language-based program; (3) it was not a 12-month placement; (4) the other students in the class did not have similar needs; (5) the school building was not secure; (6) the school did not have a second grade; (7) the third grade class contained both third and fourth graders; (8) the reading program was inappropriate because it did not offer enough 1:1 reading support; and (9) the gym schedule might become inappropriate due to an impending retirement.

An impartial hearing was held on January 17, 2012. Eleven witnesses testified, and the parties submitted 15 exhibits. M.O. provided the only evidence relating to the adequacy of the district's proposed placement schools. She testified that the "first attempt[ed]" assignment was for a second grade classroom consisting "of probably 7 or 8 paras along with maybe 10 or 12 children" and that she "felt[,] if [D.O.] was put in there[,] he would shut down completely." Confidential Joint App'x ("C.J.A.") at 114. M.O. also testified that the

second attempted assignment "was [for] a combination third/fourth grade" classroom and that she "thought the work would be just too much and overwhelming for [D.O.]." *Id.*[5]

The IHO determined, in a January 24, 2012 decision, that D.O. was not denied a FAPE and that M.O. and G.O. were therefore not entitled to a reimbursement for their unilateral placement of D.O. in the Lowell School for the 2011-2012 school year. The IHO rejected M.O. and G.O.'s challenges to the substantive and procedural adequacy of the IEP and found that the school district had demonstrated the appropriateness of its recommendation that D.O. repeat the second grade in a 12:1:1 special placement classroom in a community school. The IHO, however, did not separately address M.O. and G.O.'s challenges to the adequacy of the district's proposed placement schools.

M.O. and G.O. appealed the IHO's decision to an SRO. They argued that the IHO erred in finding that D.O. was provided a FAPE because the school district presented no evidence regarding the adequacy of the proposed placements schools. Specifically, M.O. and G.O. contended that the school district did not present any evidence that the proposed placement classroom: (1) was grouped appropriately; (2) could implement D.O.'s IEP; (3) had an open seat for D.O.; (4) would address D.O.'s speech or language impairment; or (5) could provide D.O. with eight periods of ELA per week as mandated by the IEP.

The SRO affirmed the IHO's decision and dismissed G.O. and M.O.'s appeal by decision dated April 6, 2012. The SRO initially observed that M.O. had visited the first assigned school offered by the school district (P.S. 213) and that the district subsequently

---

[5] M.O. testified that the first attempted placement school was "P.S. 230," although she was "not quite sure" of the school's name; she did not identify the second attempted placement school by name. C.J.A. at 114.

offered a second assigned school (P.S. 159) based on M.O. and G.O.'s objections to the first assignment. The SRO then rejected M.O. and G.O.'s "unsubstantiated allegations" regarding the adequacy of the second assigned school because "meaningful analysis of [those] claims . . . would require [a] [] determin[ation of] what might have happened had the district been required to implement [D.O.'s] IEP." *Id.* at 18. The SRO observed that, under this Court's decision in *R.E.*, the sufficiency of the district's offered program is to be determined on the basis of the IEP itself and that M.O. and G.O. rejected the IEP and enrolled D.O. at the Lowell School prior to the time that the district became obligated to implement D.O.'s IEP. The SRO therefore found that "the district did not have an obligation, under these factual circumstances, to present evidence that it provided special education services in conformity with [D.O.'s] IEP. . . ." *Id.* The SRO reasoned that, "[i]f it becomes clear that the student will not be educated under the proposed IEP, there can be no denial of a FAPE due to the failure to implement it." *Id.* Even having assumed that D.O. had attended P.S. 159, moreover, the SRO found that there was no evidence in the record to suggest that the district would have deviated from D.O.'s IEP in a material or substantial way.

M.O. and G.O. filed an action challenging the SRO's decision in the United States District Court for the Southern District of New York. Neither party submitted additional evidence regarding the adequacy of P.S. 159 as permitted under 20 U.S.C. § 1415(i)(2)(C). The parties cross-moved for summary judgment and the district court granted summary judgment in favor of the school district on March 27, 2014. *See M.O. v. N.Y.C. Dep't of Educ.*, 996 F. Supp. 2d 269 (S.D.N.Y. 2014). The district court observed that, under this Court's

10

decision in *R.E.*, evaluation of whether a child was denied a FAPE "must focus on the written plan offered to the parents. Speculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement." *Id.* at 271 (quoting *R.E.*, 694 F.3d at 195) (ellipsis and internal quotation marks omitted). The district court then rejected M.O. and G.O.'s argument that the DOE was required to present evidence to the IHO on P.S. 159's ability to implement D.O.'s IEP. *Id.* The district court reasoned that "[i]t would be inconsistent with *R.E.* to require the DOE to proffer evidence regarding the actual classroom D.O. would have attended, where it had become clear that D.O. would attend private school and not be educated under the IEP." *Id.*

Judgment was entered on March 28, 2014, and Plaintiffs timely appealed.

## DISCUSSION

"We review *de novo* the district court's grant of summary judgment in an IDEA case. Summary judgment in this context involves more than looking into disputed issues of fact; rather, it is a 'pragmatic procedural mechanism' for reviewing administrative decisions." *A.C. ex rel. M.C. v. Bd. of Educ.*, 553 F.3d 165, 171 (2d Cir. 2009) (citations and internal quotation marks omitted). "While the district court must base its decision on the preponderance of the evidence, it must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Id.* at 171 (citations, internal quotation marks, and alterations omitted). "Deference is particularly appropriate when the state officer's review 'has been thorough and careful,' but still we do not 'simply

rubber stamp administrative decisions.'" *R.E.*, 694 F.3d at 184 (quoting *Walczak,* 142 F.3d at 129).

Parents who unilaterally place their child in a private school do so "at their financial risk." *Reyes*, 760 F.3d at 215. "Under New York's Education Law § 4404(1)(c), the local school board bears the initial burden of establishing the validity of its plan at a due process hearing. If the board fails to carry this burden, the parents bear the burden of establishing the appropriateness of their private placement and that the equities favor them. This framework is known as the *Burlington/Carter* test." *R.E.*, 694 F.3d at 184 (footnote and citations omitted).

The school district contends that, under our decision in *R.E.*, a child must physically attend a proposed placement school before challenging that school's ability to implement their IEP. The SRO and the district court appear to have agreed. *See* C.J.A. at 18 (SRO Dec.) ("If it becomes clear that the student will not be educated under the proposed IEP, there can be no denial of a FAPE due to the failure to implement it."); *M.O.*, 996 F. Supp. 2d at 27 ("It would be inconsistent with *R.E.* to require the DOE to proffer evidence regarding the actual classroom D.O. would have attended, where it had become clear that D.O. would attend private school and not be educated under the IEP."). Other courts in this Circuit have interpreted *R.E.* in a similar fashion. *See, e.g., S.W. v. New York Dep't of Educ.*, No. 14-CV-1754, 2015 WL 1097368, at *14 (S.D.N.Y 2015) (observing that "[d]istrict courts have reached differing conclusions as to their role in evaluating the ability of schools to comply with an IEP in cases where parents unilaterally choose to place their child in a private school prior to the implementation of the IEP" and that "[s]ome courts have read

*R.E.* broadly enough to exclude all prospective challenges to a child's proposed placement" (citations omitted)).  Because *R.E.* does not foreclose *all* prospective challenges to a child's proposed placement school, we find it necessary to clarify the proper reach of our holding in *R.E.*

*R.E.* concerned reimbursement actions for unilateral private placements by several sets of parents of autistic children.  The primary challenge advanced by the *R.E.* plaintiffs was to "retrospective testimony"—"testimony by DOE personnel at the IHO hearing that certain services not listed in the IEP would actually have been provided to the child if he or she had attended the school district's proposed placement."  694 F.3d at 185.  We held that the DOE could not use retrospective testimony to rehabilitate an otherwise deficient IEP because "the IEP must be evaluated prospectively as of the time of its drafting."  *Id.* at 186.

Our decision in *R.E.* further observed that the parents of one of the children, E.Z.-L., "d[id] not seriously challenge the substance of the IEP[] . . . [and] [i]nstead [] argue[d] that the written IEP would not have been effectively implemented at [the proposed placement school]."  *Id.* at 195.  E.Z.-L.'s parents had asserted that although the school district's proposed placement school offered the services mandated by the IEP, some students receiving certain services, such as occupational therapy, were "underserved."  *See* 2d Cir. Dtk. No. 11-655-cv, Doc. 45 (Br.) at 44-45.  We rejected this argument, concluding that "[s]peculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement" because the provision of a FAPE must be evaluated "prospectively."  *R.E.*, 694 F.3d at 195.  The portion of our opinion in *R.E.* addressing E.Z.-L.'s contention, therefore, stands for the unremarkable proposition that

13

challenges to a school district's proposed placement school must be evaluated prospectively (i.e., at "the time of the parents' placement decision") and cannot be based on mere speculation. *Id.*; *see also B.R. ex rel. K.O. v. N.Y.C. Dep't of Educ.*, 910 F. Supp. 2d 670, 677 (S.D.N.Y. 2012) (Rakoff, *J.*) (Under *R.E.*, "the Court evaluates whether, at the time [the parent] was actually considering the proposed placement, the school could offer [services] in line with the IEP").

While it is speculative to conclude that a school with the capacity to implement a given student's IEP will simply fail to adhere to that plan's mandates, *see R.E.*, 694 F.3d at 195, it is not speculative to find that an IEP cannot be implemented at a proposed school that lacks the services required by the IEP. For example, it is not speculative to conclude that an IEP recommending a seafood-free environment, for a child with a life threatening seafood allergy, could not be implemented at a proposed school that was not seafood free. *See D.C. ex rel. E.B. v. N.Y.C. Dep't of Educ.*, 950 F. Supp. 2d 494, 513 (S.D.N.Y. 2013). Nor is it speculative to conclude that an IEP recommending one-on-one occupational therapy, outside of the classroom, could not be implemented at a school that provided only in-class occupational therapy in a group setting. *See B.R.*, 910 F. Supp. 2d at 676-79.

School districts do not have "carte blanche" to assign a child to a school "that cannot satisfy the IEP's requirements," *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 420 (2d Cir. 2009), and *R.E.* does not foreclose all prospective challenges to a proposed placement school's capacity to implement a child's IEP. To conclude otherwise would require parents to send their child to a facially deficient placement school prior to challenging that school's capacity to implement their child's IEP, which is "antithetical to the IDEA'[s]

reimbursement process." *See V.S. ex rel. D.S. v. N.Y.C. Dep't of Educ.*, 25 F. Supp. 3d 295, 300 (E.D.N.Y. 2014).

Turning to the case at bar, we note that the due process complaint's challenges to P.S. 159[6] were not of the type permitted by *R.E.*—prospective challenges to P.S. 159's capacity to provide the services mandated by the IEP. They were, instead, substantive attacks on D.O.'s IEP that were couched as challenges to the adequacy of P.S. 159.[7] For example, the due process complaint challenged D.O.'s placement at P.S. 159 on the grounds that the school building was too large, the student-teacher ratio was too large, and the language-based program was inappropriate, which were the very same challenges directed at D.O.'s IEP. These challenges, therefore, do not relate to P.S. 159's capacity to implement the IEP; they relate to the appropriateness of the IEP's substantive recommendations. Because the substantive adequacy of the IEP must be determined by reference to the written IEP itself, *R.E.*, 694 F.3d at 187, the school district did not have the burden to produce evidence demonstrating P.S. 159's adequacy in response to these arguments. Similarly, although M.O. testified that she visited P.S. 159 and found that the placement was inappropriate, her assertion was based on her own belief that "if [D.O.] was put in there[,] he would shut down completely," C.J.A. at 114, rather than on P.S. 159's lack of IEP-mandated services. This

---

[6] We assume, as the SRO and district court appear to have done, that the due process complaint's allegations relating to P.S. 46 were in fact challenges to P.S. 159. Absent this assumption, any challenge to the adequacy of P.S. 159 would be foreclosed. *See R.E.*, 694 F.3d at 188 n.4.

[7] With the exception of one challenge to the district's initial proposed placement school, P.S. 213, the due process complaint did not raise any prospective challenges to the assigned schools' capacity to implement D.O.'s IEP. The sole viable challenge was that the IEP had recommended D.O. repeat the second grade, but P.S. 213 did not have a second grade classroom. When notified of this deficiency in M.O.'s June 29, 2011 letter, the school district reassigned D.O. from P.S. 213 to P.S. 159. Thus, P.S. 213's lack of the IEP-mandated second grade classroom is not a valid basis for concluding that D.O. was denied a FAPE.

challenge too relates to the substantive adequacy of D.O.'s IEP, which must be assessed by reference to the written plan itself, and did not trigger a duty on the part of the school district to provide evidence regarding P.S. 159's adequacy.[8]

Although the SRO and district court appear to have concluded that the school district was not required to produce evidence on the adequacy of P.S. 159, based on an erroneous determination that *R.E.* requires a child physically to attend a proposed placement school before challenging that school's ability to implement the child's IEP, "we are entitled to affirm the judgment on any basis that is supported by the record." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 482 (2d Cir. 2014) (citing *Mauro v. S. New England Telecomms., Inc.*, 208 F.3d 384, 387 n.2 (2d Cir. 2000)). Because we find that the due process complaint's challenges to P.S. 159 were in fact substantive attacks on D.O.'s IEP rather than prospective challenges to P.S. 159's capacity to provide the services mandated by D.O.'s IEP, we agree with the SRO and district court's ultimate conclusions that (1) the school district was not required to present evidence regarding the adequacy of P.S. 159 at the impartial hearing, and (2) the school district provided D.O. a FAPE. As a result, M.O. and G.O. are not entitled to reimbursement for their unilateral placement of D.O. in the Lowell School for the 2011-2012 school year.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

---

[8] While the due process complaint also raised challenges to P.S. 159 on the grounds that it was not a 12-month placement and the other children in the classroom did not have similar needs, these issues stemmed from the IEP's recommendation that D.O. be placed in an ICT class and from the absence in the IEP of a recommended 12-month placement—not from P.S. 159's inability to implement the IEP.

16