15-16-cv
B.P. v. New York City Department of Education

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of December, two thousand fifteen.

PRESENT:  REENA RAGGI,
　　　　　RICHARD C. WESLEY,
　　　　　CHRISTOPHER F. DRONEY,
　　　　　　　*Circuit Judges.*
----------------------------------------------------------------------
B.P. and S.H., individually and on behalf of S.H.,
　　　　　　*Plaintiffs-Appellants*,


　　　　　　v.　　　　　　　　　　　　　　　　　No. 15-16-cv


NEW YORK CITY DEPARTMENT OF EDUCATION,
　　　　　　*Defendant-Appellee*.
----------------------------------------------------------------------


APPEARING FOR APPELLANTS:　　MICHAEL S. KUTZIN, Goldfarb Abrandt Salzman & Kutzin LLP, New York, New York.

APPEARING FOR APPELLEE:　　JULIE STEINER, Assistant Corporation Counsel, *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, New York.

1

Appeal from a judgment of the United States District Court for the Southern District of New York (Lorna G. Schofield, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on December 4, 2014, is AFFIRMED.

Plaintiffs B.P. and S.H., the parents of S.H., a now 12-year-old autistic child, appeal from an award of summary judgment in favor of defendant New York City Department of Education ("DOE") on plaintiffs' claim for reimbursement of private education expenses under the Individuals with Disabilities Education Act ("IDEA"), see 20 U.S.C. §§ 1400 et seq. We review an award of summary judgment de novo, although in the IDEA context we do so mindful that "'the responsibility for determining whether a challenged [Individualized Education Plan ("IEP")] will provide a child with [a free and appropriate public education ("FAPE")] rests in the first instance with administrative hearing and review officers.'" M.W. ex rel. S.W. v. New York City Dep't of Educ., 725 F.3d 131, 138 (2d Cir. 2013) (quoting M.H. v. New York City Dep't of Educ., 685 F.3d 217, 240 (2d Cir. 2012)). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.[1]

1.      Appropriateness of the Placement School

Plaintiffs contend that the district court erred in upholding the state review officer's ("SRO") decision not to address the appropriateness of the school placement offered to

---

[1] Citations to "S.D." refer to the "Sealed Documents" appendices submitted on appeal.

S.H. See B.P. v. New York City Dep't of Educ., No. 14 Civ. 1822, 2014 WL 6808130, at *12 (S.D.N.Y. Dec. 3, 2014) (stating that SRO correctly concluded that no such assessment is warranted where student never attended school).[2]

In reaching their conclusions, the SRO and the district court relied on R.E. v. New York City Department of Education, 694 F.3d 167 (2d Cir. 2012), not having the benefit of our recent decision in M.O. v. New York City Department of Education, 793 F.3d 236, 244 (2d Cir. 2015), which construed R.E. to permit challenges to a proposed placement school when based on more than speculation. M.O. explained that "[w]hile it is speculative to conclude that a school with the capacity to implement a given student's IEP will simply fail to adhere to that plan's mandates, it is not speculative to find that an IEP cannot be implemented at a proposed school that lacks the services required by the IEP." Id. (citing R.E. v. New York City Dep't of Educ., 694 F.3d at 195). M.O. further clarified that

_____

[2] Although the SRO agreed with DOE that "any inquiry into the appropriateness of the assigned public school site is speculative because the parents unilaterally enrolled the student at the Rebecca School prior to the beginning of the 2012-13 school year," S.D. 24, the SRO nevertheless "assum[ed] for the sake of argument that the student had attended the district's recommended program at the assigned public school site," analyzed the claim on its merits, and concluded that "the evidence in the hearing record would not support the conclusion that the district would have violated the FAPE legal standard related to IEP implementation" if S.H. had actually attended the placement school. Id. 26; see id. at 26−28 (analyzing plaintiffs' contentions that placement school was inappropriate because it allegedly could not provide required related services, did not have sensory gym, and posed transportation problems; and ultimately rejecting argument that "had the student attended the assigned school the district would have deviated from the student's IEP in a material or substantial way that would have resulted in a failure to offer the student a FAPE"). Moreover, the IHO also concluded that the placement school was "an appropriate site offer." Id. 60.

challenges to proposed placements can "trigger a duty on the part of the school district to provide evidence regarding [the placement school's] adequacy." Id. at 245.

Thus, the district court was not precluded from considering the appropriateness of the placement offered to S.H. solely because S.H. never attended the school. See id. at 244 (stating that parents need not send child to facially deficient placement school prior to challenging the school's capacity to implement child's IEP). Nevertheless, after an independent review of the record, we conclude that any error was harmless because DOE adduced sufficient evidence of the placement school's adequacy to support the SRO's underlying decision that DOE provided S.H. with a FAPE. See Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 482 (2d Cir. 2014) ("[W]e are entitled to affirm the judgment on any basis that is supported by the record.").

In urging otherwise, plaintiffs take issue with information provided during their tour of the placement school, and contend that DOE should be estopped from remedying faulty information given to parents through subsequent testimony. M.O. forecloses this argument. See M.O. v. New York City Dep't of Educ., 793 F.3d at 245 (recognizing that school district must produce evidence as to adequacy of placement school when confronted with permissible prospective challenge). School districts bear the burden of proving that an offered placement was appropriate. To estop them from doing so on the ground asserted by plaintiffs would essentially impose strict liability for reimbursement based on any misinformation provided to parents prior to enrollment. This runs counter to Supreme

4

Court precedent stating that parents who reject a proposed placement school and unilaterally place their child in another school "during the pendency of review proceedings . . . do so at their own financial risk." School Comm. of Town of Burlington v. Department of Educ. of Mass., 471 U.S. 359, 373−74 (1985). Thus, insofar as plaintiffs relied on information from a single school official, they bore the risk that the school district would, in fact, satisfy its burden of proving the appropriateness of the challenged placement.

Here, the record sufficiently demonstrates that the placement school had the ability to implement fully S.H.'s IEP, despite any misinformation provided to plaintiffs. For instance, plaintiffs complain that they were told that the placement school did not have the requisite staffing or space to provide S.H. with the "pull-out" occupational therapy required by his IEP.[3] DOE, however, adduced testimony that the placement school had two occupational therapists available five days a week, who could provide therapy in a service suite where each had his or her own desk.[4] See S.D. 173. This was sufficient to carry DOE's burden.

---

[3] S.H.'s IEP required 1:1 occupational therapy four times per week for 30 minutes in a "separate location provider's room" and 2:1 occupational therapy once a week for 30 minutes in a "separate location provider's room." S.D. 674−75.

[4] This testimony was not impermissibly retrospective because it merely "explain[ed] or justif[ied] what is listed in the written IEP," and did not claim "that certain services not listed in the IEP would actually have been provided to the child if he or she had attended the school district's proposed placement." R.E. v. New York City Dep't of Educ., 694

5

The same conclusion obtains with respect to IEP-mandated "pull-out" speech therapy. See, e.g., S.D. 254 (social worker testifying that speech language therapy is provided in several locations, including counseling suite or empty classroom and that therapist will find separate location to meet child's IEP needs).

As for plaintiffs' claim that the school lacked an adequate sensory gym, S.H.'s IEP did not specifically require access to such a facility. Rather, it dictated that S.H. have access to sensory equipment. See, e.g., S.D. 670 (stating as annual occupational therapy goal that S.H. "improve sensory processing and regulation needed to understand and effectively interact with people and objects" and contemplating advancement in "sensory input during sensorimotor activities (e.g., treadmill, swinging, trampoline, etc.)"). Although plaintiffs claim that the placement school's sensory gym contained only one green ball, evidence at the due process hearing established that the school's sensory equipment included weighted vests, balancing balls and beams, mats, and a trampoline, which was sufficient to ensure that S.H. received a FAPE in this respect.[5]

To the extent there was conflicting testimony from B.P. and the social worker who served as plaintiffs' placement school tour guide as to what information was relayed on the

F.3d at 185. Nor did the testimony concern "a modification that is materially different from the IEP." Id.

[5] Insofar as plaintiffs claim that the placement school posed transportation issues, S.H.'s IEP did not require special accommodations for transportation. See S.D. 678. Insofar as plaintiffs' transportation claim is a substantive attack on the IEP couched as a challenge to the adequacy of the placement school, it is impermissible. See M.O. v. New York City Dep't of Educ., 793 F.3d at 245.

tour, the initial hearing officer ("IHO") was in the best position to assess credibility, which he did in favor of the social worker. The record provides no reason to disturb that finding. See M.H. v. New York City Dep't of Educ., 685 F.3d at 258 (according deference to IHO credibility assessment); accord C.F. ex rel. R.F. v. New York City Dep't of Educ., 746 F.3d 68, 82 (2d Cir. 2014).

In sum, the record indicates that the designated school was an appropriate placement given S.H.'s needs and the school's capabilities, and that S.H. was not denied a FAPE by virtue of that assignment. Accordingly, any error in the SRO's and district court's pre-M.O. construction of the review limits of R.E. was harmless.

2.    Due Process Complaint

We identify no error in the district court's decision to not address six claims that plaintiffs failed expressly to raise in their due process complaint. See 20 U.S.C. § 1415(f)(3)(B) (stating that party requesting due process hearing shall not be allowed to raise issues at hearing that were not raised in due process complaint unless other party agrees). The due process complaint serves as fair notice to the school district, and gives the district 30 days to resolve the complaint to the parents' satisfaction before a hearing. See id. § 1415(f)(1)(B)(ii). While "the waiver rule is not to be mechanically applied," and the IDEA "does not require that alleged deficiencies be detailed in any formulaic manner," parents cannot hold back claims until after expiration of the resolution period. C.F. ex rel. R.F. v. New York City Dep't of Educ., 746 F.3d at 78.

Here, plaintiffs claim that "most of the issues that the SRO precluded, and that the District Court affirmed, were directly referenced in Plaintiffs' letter of July 9[, 2012], which was cross-referenced in their Due Process complaint." Appellant's Br. 24. As the district court recognized, however, plaintiffs' letter is referenced in the due process complaint primarily "as part of [a] chronology of events," not as an issue requiring resolution. B.P. v. New York City Dep't of Educ., 2014 WL 6808130, at *8. Moreover, while the due process complaint drew attention to particular aspects of the July 9, 2012 letter, including plaintiffs' concerns regarding the appropriateness of the placement school, it nowhere mentioned any of the six claims plaintiffs raised in the district court.[6] Thus, like the district court, we conclude that plaintiffs failed to give DOE proper notice of these claims.

Plaintiffs argue that C.F. ex rel. R.F. v. New York City Department of Education, 746 F.3d 68 (2d Cir. 2014), allows federal courts to hear claims not raised in a due process complaint if either the SRO or IHO made a record regarding the issue or if the issue goes to the heart of the dispute. We are not persuaded. First, C.F. indicates that if a matter goes to the heart of the dispute and is discussed by both the IHO and the SRO, the matter will not necessarily be foreclosed by the failure to raise it in a due process complaint. See id. at 78.

---

[6] In the due process complaint, plaintiffs stated that they "notified the DOE of the reasons for their rejection of [the placement school] on July 9th." S.D. 664. Such a general statement lacked the specificity necessary to notify DOE of plaintiffs' intent to pursue administratively every issue mentioned in that letter. See 20 U.S.C. § 1415(b)(7)(A)(ii) (stating that due process complaint shall include "description of the nature of the problem" and "a proposed resolution").

Second, and more importantly, in C.F. the issue deemed waived was not completely absent from the due process complaint. Rather, there, the "due process complaint plainly alleged that the Department failed to appropriately develop plans for [the child's] behavior" and "the proposed solution was a recommendation that [the child] continue . . . in a 1:1 placement." Id. Thus, in C.F., we held that the "Plaintiffs' allegation that the Department failed to consider a 1:1 staffing ratio" was not waived because it was encompassed within specific claims explicitly raised in the due process complaint. Id. Here, the six claims at issue were not encompassed similarly by specific allegations within the due process complaint, and the resolutions proposed therein did not directly address any of the six claims. Thus, C.F. does not support plaintiffs' argument.

Accordingly, we affirm the district court's decision as to waiver.

3. Conclusion

We have considered plaintiffs' remaining arguments and conclude that they are without merit. We therefore AFFIRM the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

9