15-2797-cv
Y.F. v. New York City Department of Education

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY  ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND  THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 24th day of August, two thousand sixteen.

Present:     ROSEMARY S. POOLER,
             GERARD E. LYNCH,
             SUSAN L. CARNEY,
                      *Circuit Judges*.

_____

Y.F., individually and on behalf of K.H., a minor,

                      *Plaintiff-Appellant*,

             v.                                          15-2797-cv

NEW YORK CITY DEPARTMENT OF EDUCATION,

                      *Defendant-Appellee*.

_____

Appearing for Appellant:     Lawrence D. Weinberg, Bloomfield, NJ.

Appearing for Appellee:     Jonathan Popolow (Richard Dearing *on the brief*), *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Schofield, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Plaintiff-appellant Y.F. appeals from the July 31, 2015 opinion and order of the United States District Court for the Southern District of New York (Schofield, *J.*), granting summary judgment to defendant-appellee New York City Department of Education on Y.F.'s claim for private school tuition reimbursement for the 2012-2013 school year for her child, K.H., pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. *See Y.F. v. N.Y.C. Dep't of Educ.*, No. 15 CIV. 6322(LGS), 2015 WL 4622500 (S.D.N.Y. July 31, 2015). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

"The role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed." *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014). "The standard of review requires a more critical appraisal of the agency determination than clear-error review but nevertheless falls well short of complete *de novo* review." *Id.* (internal quotation marks omitted). However, we review a district court's grant of summary judgment in IDEA cases de novo. *See Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 385 (2d Cir. 2014).

When a parent unilaterally enrolls her child in a private school, as Y.F. did here, we apply the three-part *Burlington-Carter* test to determine whether she should be reimbursed. Under the test, we look at "(1) whether the school district's proposed plan will provide the child with a free appropriate public education; (2) whether the parents' private placement is appropriate to the child's needs; and (3) a consideration of the equities." *C.F.*, 746 F.3d at 73. Because Y.F. does not now claim that the Individualized Education Plan ("IEP") was procedurally or substantively inadequate, under the first part of the *Burlington-Carter* test we address only whether the placement school selected by the Department of Education was capable of implementing the IEP. Where, as here, a parent challenges a placement school her child never attended, we evaluate the challenges "prospectively (i.e., at the time of the parents' placement decision)," and the challenges "cannot be based on mere speculation." *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 244 (2d Cir. 2015) (internal quotation marks omitted). *M.O.* explained,

> While it is speculative to conclude that a school with the capacity to implement a given student's IEP will simply fail to adhere to that plan's mandates, it is not speculative to find that an IEP cannot be implemented at a proposed school that lacks the services required by the IEP. For example, it is not speculative to conclude that an IEP recommending a seafood-free environment, for a child with a life threatening seafood allergy, could not be implemented at a proposed school that was not seafood free. Nor is it speculative to conclude that an IEP recommending one-on-one occupational therapy, outside of the classroom, could not be implemented at a school that provided only in-class occupational therapy in a group setting.

*Id.* at 244 (citations omitted).

On appeal, Y.F. raises numerous complaints about the placement school, P721X at the Stephen D. McSweeney School (the "McSweeney School"). But most of these complaints are untethered from the IEP's requirements. For example, the IEP does not require any particular type of science or social science curriculum, a specific travel training program, or that K.H. be placed at a school where she will be allowed a specific level of independence. And Y.F., having conceded the adequacy of the IEP, cannot now complain that the placement school does not provide services not required by the IEP.

Further, the challenges that *are* tethered to the IEP are based on mere speculation that the McSweeney School would not implement the IEP. For example, with respect to the provision of related services, Y.F. points to a report showing that the school had not delivered all services to students in the past. However, the fact that a school has failed to provide services to students in the past is not a non-speculative basis for concluding that the school lacked the capacity to implement a particular student's IEP. *See R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 195 (2d Cir. 2012). Similarly, Y.F. challenges the math program at the placement school, citing a quality review report that allegedly showed that the math program was "lacking." The report stated that the "school analyzed the math curriculum and recognized that students needed more support in this area," and that the "school's internal coach and district math coach are collaborating to enhance the math curriculum and instruction for the students." Confidential App'x at 408. Further, Y.F. acknowledged at the hearing that the school taught basic math. Concluding from this report that the school would be unable to assist the child in achieving her math goals—which are to solve one step addition and subtraction word problems, use geometric terminology to describe her environment, and solve one digit by one digit multiplication problems—would be entirely speculative.

In other instances, Y.F. herself proffered arguments and evidence contradicting her own claims. Regarding the IEP's requirement that K.H. participate in vocational training and a work study program, Y.F. complains about the absence of an internship program. Setting aside the potential differences between an internship program and the vocational training and work study program mandated by the IEP, Y.F. herself described the McSweeney School's program as an internship program at the hearing and submitted a report about the School which described its vocational placement program. And with respect to the IEP's requirement of small group instruction and Y.F.'s complaint that the School does not use small group instruction, Y.F.'s due process complaint specifically alleges that small group instruction is used at the School. Based on this evidence, the SRO and IHO properly determined that these were not non-speculative complaints regarding the School's actual inability to implement the IEP.

We next turn to Y.F.'s argument that because she introduced evidence of the McSweeney School's deficiencies, and the Department of Education did not introduce any evidence about the appropriateness of the placement, the deficiencies are uncontradicted and reversal is warranted. It is true that we held in *M.O.*, after the administrative appeal in this case was completed, that a non-speculative challenge to the ability of a placement school to implement the IEP can "trigger a duty on the part of the school district to provide evidence regarding [the placement school's] adequacy." 793 F.3d at 245. But no such duty attaches if the challenge is speculative. Further, even if some challenges raised by Y.F. are non-speculative, here we defer to the conclusions of

the IHO and SRO that there was sufficient evidence to determine that the McSweeney School was able to implement the IEP.

Finally, Y.F. argues that the district court, SRO, and IHO erred in not considering the testimony of Sally Ord, an employee of the private school that K.H. attended instead of the McSweeney School. Even if the testimony should have been considered, there is no reversible error. Indeed, the SRO alternatively considered the testimony and concluded that the testimony "carries little if any weight in assessing whether the claims raised by the parent in her due process complaint notice are speculative and/or have any merit," as "much of the testimony . . . consists of conclusory statements (i.e., the student would regress at the recommended school; the curriculum would not address the student's needs), or a recitation of things she did not observe being used during her visits to the recommended school." Confidential App'x at 530 n.17. And the district court, too, "assume[d] arguendo that this testimony should be considered," but nonetheless "reject[ed] it." *Y.F.*, 2015 WL 4622500, at *6 n.3.

We have considered the remainder of Y.F.'s arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

4