16-2591-cv
C.E. v. Chappaqua Cent. Sch. Dist.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of June, two thousand seventeen.

PRESENT:
> BARRINGTON D. PARKER,
> RICHARD C. WESLEY,
> CHRISTOPHER F. DRONEY,
> > *Circuit Judges.*

------------------------------------------------------------------

C.E., Individually, and as Parents of D.E., a minor under the age of 18 years, J.E., Individually, and as Parents of D.E., a minor under the age of 18 years,

> *Plaintiffs-Counter-*
> *Defendants- Appellants*,


v.                                                                  No. 16-2591-cv


CHAPPAQUA CENTRAL SCHOOL DISTRICT,

> *Defendant-Counter-*
> *Claimant-Appellee*,


NEW YORK STATE EDUCATION DEPARTMENT

> *Defendant*.

-------------------------------------------------------------------


FOR PLAINTIFFS-COUNTER-          PETER D. HOFFMAN, Law Office of Peter
DEFENDANTS-APPELLANTS:           D. Hoffman, P.C., Katonah, NY.


1

FOR DEFENDANT-COUNTER-            MARK C. RUSHFIELD, Shaw,
CLAIMANT-APPELLEE:               Perelson, May & Lambert LLP,
                                 Poughkeepsie, NY.

Appeal from a June 29, 2016, judgment of the United States District Court for the Southern District of New York (Román, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellants, C.E. and J.E. ("the Parents"), parents of minor child D.E., brought this appeal following the district court's denial of their motion for summary judgment, which effectively affirmed decisions by a State of New York Impartial Hearing Officer ("IHO") and State Review Officer ("SRO") concluding that the Parents were not entitled to reimbursement under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, for two school years when they placed D.E. in a private school after removing him from the Appellee, Chappaqua Central School District ("the School District"). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

1. Subject Matter Jurisdiction

There are two issues regarding subject matter jurisdiction in this case. The first relates to our subject matter jurisdiction following the denial of the Parents' motion for summary judgment, while the second relates to the nature of the SRO's decision.

a. *The District Court's Denial of Summary Judgment*

First is the issue of whether we have subject matter jurisdiction to review the substantive issues following the district court's decision denying the Parents' motion for summary judgment. "Ordinarily, orders denying summary judgment do not qualify as final decisions subject to appeal." *McColley v. Cty. of Rensselaer*, 740 F.3d 817, 822 (2d Cir. 2014) (internal quotation marks omitted). The denial of summary judgment in this case is not a denial that leaves further proceedings to be conducted, however. The district court issued a thorough opinion addressing the merits of the Parents' claims. The court concluded "that the 2011-2012 and 2012-2013 [Individualized Education Plans ("IEPs")] were both procedurally and substantively adequate, and that the services offered by the [School] District were appropriate." The court then instructed the clerk of court to "close the case," and the clerk entered a judgment closing the case the following day. The district court's decision thus had the effect of denying the Parents' appeal to that court, and

a final judgment was entered immediately thereafter. We have reviewed IDEA appeals to this Court under similar circumstances. *See Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 121 (2d Cir. 1998) (issuing decision in IDEA appeal to this Court where district court denied summary judgment and then entered judgment against moving party).

We therefore conclude that we have subject matter jurisdiction over the Parents' appeal to this Court. *See* 28 U.S.C. § 1291.

### b. *The SRO's Dismissal on Procedural Grounds*

The School District moved before the district court for judgment on the pleadings, asserting that the court lacked subject matter jurisdiction because the SRO dismissed the Parents' appeal because they failed to comply with the page limit and font size requirements of New York state regulations applicable to the SRO's review and therefore did not exhaust their administrative remedies. The district court denied that motion. The court distinguished several district court decisions holding that a party's failure to timely appeal to an SRO resulted in a party failing to exhaust its administrative remedies. The court also relied on the fact that the SRO here had "extensively addressed the merits" of the Parents' claims after noting the procedural failings. J.A. 858. The School District now renews its challenge to the district court's subject matter jurisdiction.

"In reviewing a district court's determination of whether it has subject matter jurisdiction, we review factual findings for clear error and legal conclusions *de novo.*" *AmBase Corp. v. United States*, 731 F.3d 109, 117 (2d Cir. 2013) (emphasis added).

Notwithstanding the SRO's statement that he was dismissing the Parents' appeal because they failed to comply with regulations governing the font size and page limitations of submissions to SROs, the SRO did not dismiss the appeal on that basis but instead rendered a final decision on the merits of the Parents' claims. We therefore agree with the district court that the Parents "exhausted all administrative remedies, as required by the IDEA, before seeking judicial relief," J.A. 859, and that it had subject matter jurisdiction to address the merits of their claim. *Cf. Polera v. Bd. Of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487 (2d Cir. 2002) (explaining the purpose of the exhaustion requirement as allowing the agency "to bring its expertise to bear on a problem" and conduct a "full exploration of technical educational issues"). Furthermore, because the Parents exhausted their administrative remedies in this case, we have no need to decide what procedural deficiencies may result in a party failing to satisfy the IDEA's exhaustion requirement. *See B.C. ex rel. B.M. v. Pine Plains Cent. Sch. Dist.*, 971 F. Supp. 2d 356, 365 (S.D.N.Y. 2013) (collecting cases).

3

2. Standard of Review

Before turning to the merits of the Parents' appeal, we note that the "role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed." *C.F. ex rel. R.F. v. N.Y. City Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014). "The standard of review requires a more critical appraisal of the agency determination than clear-error review but nevertheless falls well short of complete *de novo* review. The deference owed depends on both the quality of the opinion and the court's institutional competence." *Id.* (internal citation and quotation marks omitted).

3. Bias & Competence

The Parents first argue that the IHO's decision should not be afforded deference because he was (1) biased because he had previously been a school superintendent and (2) incompetent because (a) he was not an attorney and (b) he fell asleep during portions of the hearing.

a. *Bias*

The district court did not err by concluding that the IHO was not biased because of his long-ago-completed service as a school superintendent in school districts that are not parties in this action. "Absent any evidence casting doubt on the impartiality of the local or the state review officers who . . . examine[d] [the Parents'] claims, we cannot presume that they would be biased." *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 249 (2d Cir. 2008). The IHO complied with the relevant state regulations intended to prevent biased hearing officers from conducting such hearings. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1(x) ("No individual employed by a school district . . . may serve as an impartial hearing officer and no individual employed by such schools . . . may serve as an impartial hearing officer for two years following the termination of such employment . . . ."). The Parents' contention that the IHO's rulings during the hearing were "solely" in favor of the School District, moreover, is clearly refuted by the record. The IHO conducted himself appropriately during the hearing, and evidence he was biased is lacking.

b. *Competence*

The IHO was also competent to preside over the hearing although not an attorney. The New York regulations "grandfathered" him status as an IHO even though he was not a lawyer because he was an IHO prior to September 1, 2001. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1(x) ("An impartial hearing officer shall . . . be an individual admitted to the practice of law in the State of New York . . . or be an individual certified by the State . . . as

4

an impartial hearing officer on September 1, 2001 . . . .").  Further, the IHO also brought decades of experience as a hearing officer to the bench.

With regard to the Parents' assertion that the IHO was sleeping during portions of the hearing, the IHO provided an explanation for why the Parents might mistakenly think that, and our review of the portions of the record cited by the Parents confirms the district court's conclusion that the IHO was instead awake and attentive.  The IHO spoke frequently, often asking questions of witnesses, ruling on objections, and addressing the admission of evidence.

### 4.  The 2011 Behavior Intervention Plan

The Parents' final challenge—and their only substantive one—is to the decisions of the IHO, SRO, and district court with respect to the School District's 2011 Behavior Intervention Plan ("BIP").[1]  The Parents argue that the School District could not have implemented or updated the 2011 BIP in time to create a required, timely IEP in the following school year based on their past experience with the School District.  The Parents also assert that the 2011 BIP was the product of a flawed process.  We find no error.

First, the IHO, SRO, and district court all properly rejected the Parents' argument that the School District would not have adhered to and properly implemented or updated the 2011 BIP and the IEP for the forthcoming school year because that argument was speculative.  The Parents' argument was premised on their contention that the School District had a "pattern and practice" of failing to develop and implement Functional Behavioral Assessments[2] and BIPs in a timely fashion.  Appellant's Br. 48.  However, although the Parents assert that the 2011 BIP was developed late and then only partially implemented at the end of the 2010-2011 school year, the record establishes that the 2011 BIP was actually developed for the following school year, the 2011-2012 year, thereby suggesting that it was developed in a timely fashion and partially implemented *early*.

Furthermore, we have previously explained that "it is speculative to conclude that a school with the capacity to implement a given student's IEP will simply fail to adhere to that plan's mandates . . . ."  *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 244 (2d Cir.

---

[1] According to the School District's expert, a BIP seeks to "prevent the reoccurrence of behavior, to respond or manage behavior when it does occur," and to "teach appropriate alternative or replacement skills."  J.A. 1511.

[2] A Functional Behavioral Assessment is a process in which educators seek to "determine the functions that a behavior is serving for" a student, "with the intent of . . . reinforcing or maintaining consequences around the behavior."  J.A. 1510.

2015).  Although the Parents frame their arguments as an attack on the School District's "capacity" to implement or update the 2011 BIP if needed, we conclude that their argument is best construed as a claim that the School District would not have followed through on its commitment to implement and update the BIP, not that it "lack[ed] the services required" to do so.  *Id.*  A School District official testified that the District was ready to update the BIP if needed, and that testimony is supported by documentary evidence.  This is not a situation where a school district plainly lacks the ability to offer the services it says it will offer.  *Cf. id.* (providing, as example of argument that is not speculative and therefore permissible, situation in which an IEP recommends "one-on-one occupational therapy, outside of the classroom," but a school only offers "in-class occupational therapy in a group setting").

Second, we are not persuaded by the Parents' challenges to the process by which the 2011 BIP was created, or their argument that the district court failed to credit the testimony of their witnesses.   "District courts are not to make subjective credibility assessments, and cannot choose between the views of conflicting experts on controversial issues of educational policy in direct contradiction of the opinions of state administrative officers who had heard the same evidence."  *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 240 (2d Cir. 2012) (alterations and internal quotation marks omitted).  Considered individually and cumulatively, the procedural claims the Parents make do not succeed.  *See R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 190 (2d Cir. 2012) (explaining that procedural violations only entitle parents to reimbursement if they (1) impede a child's right to a free appropriate public education; (2) significantly impede "the parents' opportunity to participate in the decisionmaking process;" or (3) cause "a deprivation of educational benefits").  The 2011 BIP was regarded as appropriate by one of the Parents' expert witnesses, Dr. Tarnell, as long as the BIP was implemented properly.  Moreover, the adequacy of the resulting BIP essentially came down to a credibility determination between the School District's witnesses and the Parents' witnesses.  The district court properly decided to not reverse the IHO's decision to credit the former over the latter.  *See M.H.*, 685 F.3d at 240.  We likewise decline to reject the district court's conclusion affirming the IHO's credibility determination.

We have considered the Parents' remaining arguments and conclude that they are without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

6