13-4187
R.B. v. New York City Dep't of Educ.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29ᵗʰ day of October, two thousand fourteen.

PRESENT: DENNIS JACOBS,
         CHRISTOPHER F. DRONEY,
                        <u>Circuit Judges</u>,
         LEWIS A. KAPLAN,[*]
                        <u>District Judge</u>.

- - - - - - - - - - - - - - - - - - - -X
**R.B., individually & on behalf of D.B., M.L.B., individually & on behalf of D.B.,**
         <u>**Plaintiffs-Appellants**</u>,

         **-v.-**                                    **13-4187**

**NEW YORK CITY DEPARTMENT OF EDUCATION,**
         <u>**Defendant-Appellee**</u>.
- - - - - - - - - - - - - - - - - - - -X

---

[*]    The Honorable Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

**FOR APPELLANT:**                    JESSE COLE CUTLER, Law Offices of Regina Skyler & Associates, New York, New York.

**FOR APPELLEE:**                     ELLEN RAVITCH (<u>for</u> Zachary W. Carter, Corporation Counsel of the City of New York, <u>with</u> Pamela Seider Dolgow <u>on the brief</u>), New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Nathan, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

R.B. and M.L.B. (collectively, "Plaintiffs"), individually and on behalf of their minor child D.B., appeal from the September 30, 2013 judgment of the United States District Court for the Southern District of New York (Nathan, <u>J.</u>), granting summary judgment to defendant-appellee New York City Department of Education (the "DOE") on Plaintiffs' claim for tuition reimbursement under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 <u>et seq.</u>  The district court affirmed the decision of the State Review Officer ("SRO"), which had reversed the decision of the New York State Impartial Hearing Officer ("IHO").[1]  Plaintiffs challenge the SRO's conclusion (affirmed by the district court) that the DOE's 2010-2011 individualized education program ("IEP") provided D.B. a Free and Appropriate Public Education ("FAPE").  We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

---

[1]    "[T]he IDEA mandates that states provide 'impartial due process hearings'" under which parties may pursue their claims. <u>R.E. v. N.Y.C. Dep't of Educ.</u>, 694 F.3d 167, 175 (2d Cir. 2012) (quoting 20 U.S.C. § 1415(f)). In New York, parties first bring their claims before an IHO, who is subject to review by the SRO. <u>Id.</u>  "Either party may then bring a civil action in state or federal court to review the SRO's decision." <u>Id.</u>

D.B., born in 1998, has been diagnosed with autism. The local Committee on Special Education ("CSE") has classified him a "child with a disability" eligible to receive an IEP.  See 20 U.S.C. § 1401(3).

At a February 2010 meeting to develop an IEP for the 2010-2011 school year, the CSE team agreed that a 12-month, 6:1:1 (students : teachers : paraprofessionals) program in a specialized school was appropriate.  Also included in the 2010-2011 IEP were occupational therapy ("OT") (4 x 30 minutes per week); speech and language therapy ("SLT") (4 x 30 minutes per week individually, 1 x 30 minutes per week in a group of two); and counseling (1 x 30 minutes per week individually, 1 x 30 minutes per week in a group of two). D.B.'s special education teacher at the Rebecca School (which he had been attending) agreed with a number of the recommendations and goals of the 2010-2011 IEP, and M.L.B. did not object.

The DOE's June 2010 Final Notice of Recommendation from the DOE (dated June 15, 2010), which restated the CSE team's recommendation of a 6:1:1 class in a specialized school and offered D.B. a placement at P.S. M169's Robert F. Kennedy School ("P.169").

Plaintiffs ultimately rejected DOE's recommended placement for 2010-2011 and enrolled D.B. in the Rebecca School, a private special education school that serves children with autism.  There, D.B. received thirty-minute sessions of OT four times per week; SLT five times per week; and counseling (once per week individually; and once in a group of two); and art therapy and music therapy, each twice per week.  Tuition, for which Plaintiffs seek full reimbursement, was $92,100.

On January 25, 2011, M.L.B. and R.B. filed a due process complaint requesting a hearing before an IHO.  Dr. Salsberg, D.B.'s neuropsychologist, testified as Plaintiffs' expert witness that he had worked as a paraprofessional prior to attending graduate school, that he visits "dozens of schools a year," and that he had observed DOE 6:1:1 programs "[a]t least five or six [times] in the last few months [prior to July 2011]."  Tr. 332, 347.  Dr. Salsberg testified that, "if [D.B.] was in a class with [students who had] more emotional or behavioral difficulties," he was "sure that [D.B.] would regress."  Tr. 334.

Based on Dr. Salsberg's testimony, the IHO found that the DOE had failed to offer D.B. a FAPE, and that D.B.'s parents were entitled to tuition reimbursement for the 2010-2011 school year.  On appeal, the SRO reversed.  The district court affirmed the SRO, and this appeal followed.

We review <u>de novo</u> a grant of summary judgment by the district court in an IDEA case.  <u>R.E. v. N.Y.C. Dep't of Educ.</u>, 694 F.3d 167, 184 (2d Cir. 2012).  In doing so, we recognize that "the role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed."  <u>Gagliardo v. Arlington Cent. School Dist.</u>, 489 F.3d 105, 112 (2d Cir. 2007) (internal quotation marks omitted).  "Although [we] must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence, . . . such review 'is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.'"  <u>Cerra v. Pawling Cent. School Dist.</u>, 427 F.3d 186, 191-92 (2d Cir. 2005) (internal quotation marks and citation omitted) (quoting <u>Bd. of Educ. v. Rowley</u>, 458 U.S. 176, 206 (1982)).  "We must give 'due weight' to the state proceedings, mindful that we lack 'the specialized knowledge and experience necessary to resolve . . . questions of educational policy.'"  <u>R.E.</u>, 694 F.3d at 189 (quoting <u>Gagliardo</u>, 489 F.3d at 113).  We "generally defer to the final decision of the state authorities, even where the reviewing authority disagrees with the hearing officer," <u>M.H. v. N.Y.C. Dep't of Educ.</u>, 685 F.3d 217, 241 (2d Cir. 2012) (internal quotation marks omitted).  Only if the SRO's decision is "insufficiently reasoned to merit . . . deference," may we disregard it.  <u>Id.</u> at 246.

To determine IEP compliance with the IDEA, courts consider "whether there were procedural violations of the IDEA," and "whether the IEP was substantively adequate, namely, whether it was reasonably calculated to enable the child to receive educational benefits."  <u>R.E.</u>, 694 F.3d at 189-90 (internal quotation marks, alteration, and citations omitted).  Plaintiffs challenge both the procedural and substantive adequacy of the 2010-2011 IEP.

<u>Procedural Adequacy.</u>  "[N]ot every procedural error will render an IEP legally inadequate."  <u>M.H.</u>, 685 F.3d at 245.  Relief is warranted only if procedural inadequacies "(I) impeded the child's right to a [FAPE]; (II)

4

significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of [a FAPE] to the parents' child; or (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii).

**1.** Plaintiffs first argue that the IEP team relied upon insufficient information in developing D.B.'s 2010-11 IEP, and that the failure to properly reevaluate D.B. prior to the CSE meeting impeded his right to a FAPE. DOE argues that the Court should defer to the SRO, which found that the documents the IEP team reviewed--including a December 2009 evaluation of D.B. from the Rebecca School, D.B.'s 2009-2010 IEP, and a November 2009 classroom observation of D.B. conducted by the DOE--constituted "sufficient evaluative data with which to formulate [D.B.'s 2010-2011 IEP]." SRO Dec. 14.

Any child who is eligible to receive a FAPE under the IDEA must be evaluated by his or her school district's CSE in order to "gather relevant functional, developmental and academic information about the student" necessary to "determine whether the student is a student with a disability and the content of the student's [IEP]." N.Y. Comp. Codes R. & Regs. Tit. 8 ("8 NYCRR"), § 200.4(b)(1); see also 20 U.S.C. § 1414(a)-(c). New York law requires that a student be evaluated by the CSE prior to his initial IEP and at least once every three years thereafter. See 8 NYCRR § 200.4(b)(4). An evaluation may also be conducted if "the [CSE] determines that the [student's] educational or related services needs . . . warrant a reevaluation or if the student's parent or teacher requests a reevaluation." Id. In conducting its evaluation, the CSE team should "use a variety of assessment tools and strategies" and "not use any single measure or assessment as the sole criterion for . . . determining an appropriate educational program for the child." 20 U.S.C. § 1414(b)(2)(A), (B).

Plaintiffs argue that the documents reviewed by the CSE team were inadequate and out-of-date, and that a triennial evaluation should have been conducted (instead of an annual review). The SRO observed that the record was "not clear as to whether the student was required to have a triennial evaluation," but concluded that because the IEP itself was marked as an "annual review," and "the parents ha[d] not contested this," the DOE was not statutorily required to conduct a full evaluation; the review that did occur,

5

moreover, was found by the SRO to be wholly adequate.  SRO Dec. at 13-14.

These conclusions are supported by the record, and accordingly merit deference: first, the CSE meeting could have been rescheduled if either the Plaintiffs or the CSE team thought an evaluation was required; second, M.L.B. knew of her right to provide the CSE team with any evaluative information she wished them to consider; and third, M.L.B. did not object, during or after the CSE meeting, to the evaluative information the CSE reviewed, or request that the CSE perform testing to obtain additional information about D.B.'s educational needs.

**2.**  Plaintiffs next contend that the 2010-2011 IEP is procedurally flawed because it did not mandate the exclusive use of the Developmental, Individual-Difference, Relationship-Based Model ("DIR/Floortime") methodology, which they claim is the only pedagogical methodology suitable for D.B.[2]

Under the IDEA, a student who is entitled to "special education" services should receive "specially designed instruction," which requires "adapting, as appropriate to the [student's] needs . . . , the content, methodology, or delivery of instruction."  34 C.F.R. § 300.39(b)(3); see also 20 U.S.C. § 1401(29).  So long as the methodologies referenced in the IEP are "appropriate to the [student's] needs," 34 C.F.R. § 300.39(b)(3), the omission of a particular methodology is not a procedural violation.  See R.E., 694 F.3d at 192-94.

The SRO determined that IEP's omission of a specific methodology did not deny D.B. a FAPE because "[t]he hearing record does not reflect that [D.B.] could only receive educational benefits through the exclusive use of the DIR/Floortime methodology."  This conclusion is supported by the evidence available at the time of the IEP's development, and is not undermined by any evidence offered by Plaintiffs.  See also Salsberg Report (explained that "[i]n October, 2001, [D.B.] was evaluated by Cecelia McCarton, M.D., who

---

[2]    This claim implicates both procedural and substantive elements of Plaintiffs' challenge to the 2010-2011 IEP.  To the extent it is also a substantive challenge, it is rejected for the reasons stated in this section.

recommended Applied Behavioral Analysis (ABA) therapy at home and school.  [D.B.] then attended an ABA classroom the following year at CPELC with progress noted").  Accordingly, we defer to the SRO's conclusion that the failure of D.B.'s 2010-2011 IEP to mandate the use of DIR/Floortime was not a procedural violation.

Substantive Adequacy.  "[A] school district complies with IDEA's substantive requirements if a student's IEP is reasonably calculated to enable the child to receive educational benefit[s]."  Cerra, 427 F.3d at 194-95 (internal quotation marks omitted).  "A school district is not, however, required to furnish every special service necessary to maximize each handicapped child's potential." Id. at 195 (internal quotation marks and citations omitted). "Rather, a school district fulfills its substantive obligations under the IDEA if it provides an IEP that is likely to produce progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement."  Id. (internal quotation marks omitted).

Plaintiffs contend that the SRO's decision that the recommended 6:1:1 program was appropriate for D.B. was "inadequately reasoned" because the SRO did not discuss the testimony of Dr. Salsberg, upon which the IHO relied. But neither his testimony nor other evidence in the record demonstrates that the P.169 or its 6:1:1 program is inappropriate for D.B; to the contrary, the record suggests that D.B. would have been functionally grouped in the assigned class so as to mitigate the perceived disadvantages.  D.B. was within the age and functional ranges of students in the proposed class, and the teacher, Ms. Klemm, testified that D.B. was similar to students in terms of his academic, social, and behavioral needs.

Dr. Salsberg's prior experience and M.L.B.'s observations of particular classes during her visit to P.169 may have caused them to worry that P.169 was incapable of adhering to D.B.'s 2010-11 IEP.  However, "speculation . . . is not an appropriate basis for unilateral placement." R.E., 694 F.3d at 195.  The rationale for this principle is apparent in M.L.B.'s admission that during her short summer tour of the placement, "I didn't feel like I got an impression of the actual class that [D.B.] was [to be] in" because "there were no kids there[.]"  Tr. 396.

7

In sum, the record supports the well-reasoned conclusion of the SRO that D.B.'s 2010-2011 IEP was reasonably calculated to produce progress, and could be fully implemented at P.169.  Accordingly, we conclude that the 2010-2011 IEP was substantively adequate.

We have considered all of Plaintiffs' remaining arguments and find them to be without merit.  For the foregoing reasons, and giving appropriate deference to the SRO, we conclude that the 2010-2011 IEP was both procedurally and substantively adequate.  As a result, Plaintiffs are not entitled to reimbursement under the IDEA.

The judgment of the district court is hereby **AFFIRMED**.

                                    FOR THE COURT:
                                    CATHERINE O'HAGAN WOLFE, CLERK