**C.W. and W.W, individually and on behalf of W.W., Plaintiffs,**

v.

**CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, d/b/a New York City Department of Education, Defendant.**

15 Civ. 3214 (WHP)

United States District Court, S.D. New York.

Signed 03/22/2016

Jesse Cole Cutler, Skyer, Castro, Foley & Gersten, New York, NY, for Plaintiff.

Justin Killian, Lesley Berson Mbaye, New York City Law Department, New York, NY, for Defendant.

## MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

Plaintiffs C.W. and W.W., (collectively, "W.W.'s Parents" or "Plaintiffs") on behalf of their child, W.W., bring this action against the New York City Department of Education (the "DOE") under the Individuals with Disabilities Education Act (the "IDEA"). They seek reversal of a New York State Review Officer's ("SRO's") final administrative decision, which affirmed an Impartial Hearing Officer's ("IHO's") administrative finding that Plaintiffs were not entitled to reimbursement for W.W.'s 2011–2012 private school tuition. The parties cross-move for summary judgment. For the following reasons, the DOE's motion for summary judgment is granted and Plaintiffs' motion for summary judgment is denied.

## BACKGROUND

W.W. is a special needs student with speech and language impairment and a general cognition ability in the "extremely low range." Beginning in the fourth grade, he was enrolled at the Cooke Center for Learning and Development (the "Cooke Center"), an independent special education school.

On June 8, 2011, prior to the start of W.W.'s eleventh-grade year, the DOE's Committee on Special Education ("CSE") convened an Individualized Education Plan ("IEP") meeting to formulate a program for the 2011–2012 school year (the "CSE Meeting"). W.W.'s mother attended the meeting with a Cooke Center administrator, special-education teacher and DOE representative Jaqueline Giurato; a parent member; and a DOE school psychologist. W.W.'s math and English teachers participated telephonically. W.W. was not invited to participate.

Following the meeting, the CSE recommended that W.W. be placed in a community school with a ratio of 15 students to 1 teacher (15:1), and provided with related speech, language, and counseling services. The DOE then sent Plaintiffs a final Notice of Recommendation, offering W.W. placement in the Law, Government and Community Service High School ("LGCS"). By letter dated August 24, 2011, Plaintiffs rejected the IEP and re-enrolled W.W. at the Cooke Center for eleventh grade. After the school year began, W.W.'s mother toured LGCS and considered it to be insufficient.

In August 2012, W.W.'s Parents filed a Due Process Complaint contending that the DOE's proposed program would deny their son a Free and Appropriate Public Education ("FAPE"). In May 2013, after a three-day hearing, the IHO rejected W.W.'s Parents' objections to the IEP. Specifically, the IHO determined that: the IDEA did not mandate participation of a general education teacher at the CSE Meeting; the telephonic participation of some of W.W.'s teachers was appropriate; the CSE had adequate assessment data; the IEP's goals and objectives—which were largely prepared by the Cooke Center—sufficiently addressed W.W.'s needs; and the IEP's "transition plan" was "more

than sufficient" despite the CSE's failure to invite W.W. to the CSE meeting. (IHO Dec. 10–14.) The IHO also found that DOE's recommended placement at LGCS was "reasonably calculated to provide [W.W.] with the opportunity for meaningful educational benefit" even though the Cooke Center "might be far superior a program." (IHO Dec. at 15.)

On appeal, the SRO acknowledged some "errors and deficiencies" in the development of W.W.'s IEP but nevertheless "adopt[ed] the majority of the IHO's conclusions ... and concur[red] with the IHO's determination that the DOE offered W.W. a FAPE, and ... the June 2011 CSE was reasonably calculated to provide [a] meaningful educational benefit to the student." (SRO Dec. at 6.) The SRO summarized his findings as follows:

[D]espite several errors and deficiencies, the June 2011 CSE adequately addressed the student's unique special education needs and developed an IEP that was likely to produce progress. The evidence in the hearing record reveals that the June 2011 CSE relied on sufficient, up-to-date evaluative information; that the present levels of the June 2011 IEP although lacking information about the student's language needs were sufficient; that the annual goals addressed the majority of the student's deficit areas and were measurable enough to guide instruction and monitoring of progress; that the transition plan was adequate and sufficiently individualized despite lacking measurable post-secondary goals; that the failure of the June 2011 CSE to invite the student to help develop the transition plan was a procedural error and that the student's preferences and interests were otherwise considered; that the 15:1 Special class placement in a community school was calculated to confer educational benefit; and that assuming but not deciding that the lack of a regular education

teacher at the June 2011 CSE was a procedural error, this inadequacy did not rise to the level of a denial of a FAPE.

(SRO Dec. at 15.) The SRO further found that W.W.'s Parents' objections to the proposed placement at LGCS were impermissibly speculative. (SRO Dec. at 16.)

### LEGAL STANDARD

"Although the parties have styled their submissions as motions for summary judgment, 'the procedure is in substance an appeal from an administrative determination, not a summary judgment.'" *C.U. v. New York City Dep't of Educ.*, 23 F.Supp.3d 210, 222 (S.D.N.Y. 2014) (quoting *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n. 3 (2d Cir.2005)). In IDEA cases, "federal courts reviewing administrative decisions must give due weight to [administrative] proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 240 (2d Cir.2012) (quotations and citations omitted). Accordingly, this Court "must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead." *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir.2012). Moreover, where the SRO and IHO agree, "[d]eference to the conclusions of the administrators on this issue is particularly appropriate." *C.H. v. Goshen Cent. Sch. Dist.*, No. 11–cv–6933 (CS), 2013 WL 1285387, at *12 (S.D.N.Y. Mar. 28, 2013); *see also B.K. v. New York City Dep't of Educ.*, 12 F.Supp.3d 343, 360 (E.D.N.Y.2014) ("[D]eference is particularly apt where the IHO and SRO decisions are in agreement and are based on the

same record as that before the district court."). Of course, "judicial deference is not absolute" if the SRO's decision is poorly reasoned or not "based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *T.F. v. The New York City Dep't of Educ.,* No. 14–cv–3401 (WHP), 2015 WL 5610769, at *3 (S.D.N.Y. Sept. 23, 2015) (quotations and citation omitted).

## DISCUSSION

■ "Parents who unilaterally place their child in a private school do so at their own financial risk." *M.O. v. New York City Dep't of Educ.,* 793 F.3d 236, 243 (2d Cir.2015) (citation and quotations omitted). However, reimbursement for private-school tuition is appropriate if the evidence shows "(1) that the proposed IEP was inadequate to afford the child an appropriate public education, and (2) that the private education services obtained by the parents were appropriate to the child's needs." *Walczak v. Fla. Union Free Sch. Dist.,* 142 F.3d 119, 129 (2d Cir.1998) (citing *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.,* 471 U.S. 359, 370, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)); *Florence Cnty. Sch. Dist. Four v. Carter,* 510 U.S. 7, 12–14, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993)). Parents must also show "that the equities favor them." *R.E.,* 694 F.3d at 185 (citing *Cerra v. Pawling Cent. Sch. Dist.,* 427 F.3d 186, 192 (2d Cir.2005)).

■ Courts assess IEPs for procedural and substantive adequacy with a view to ensuring that they are "reasonably calculated to enable the child to receive educational benefits." *A.C. ex rel. M.C. v. Bd. of Educ. of Chappaqua Cent. Sch. Dist.,* 553 F.3d 165, 171 (2d Cir.2009) (internal quotations and citations omitted). While substantive violations automatically trigger reimbursement, procedural violations only lead to reimbursement if they "significantly impede[ ] the parents' opportunity to participate in the decision making

process" or "cause[ ] a deprivation of educational benefits." *R.E.,* 694 F.3d at 190 (2d Cir.2012) (internal citation omitted).

Here, Plaintiffs allege that the SRO failed to properly address: (1) procedural shortcomings concerning the development of the IEP; (2) alleged substantive deficiencies in the IEP; and (3) alleged deficiencies regarding placement at LGCS.

### I.  *Procedural Adequacy*

#### a.  *Composition of the CSE Meeting*

■ W.W.'s Parents argue that the absence of a general-education teacher on the IEP team contributed to the denial of a FAPE. Under the IDEA, a general-education teacher must attend IEP meetings when a "child is, or may be, participating in the regular education environment." 20 U.S.C. § 1414(d)($l$)(B)(ii). The DOE asserts that this regulation does not apply to W.W. because he required special education for all academic activities. On the other hand, the SRO acknowledged that the IEP recommendation of "full participation" in "lunch, assemblies, trips and/or other school activities" with nondisabled students could arguably be construed as a regular education environment. (SRO Dec. at 6.) But where a child's prospective general education environment is limited to activities such as lunch, recess, and assemblies, the absence of a general education teacher during an IEP meeting should not be considered a dispositive procedural error. *See J.F. v. New York City Dep't of Educ.,* No. 12–cv–2184 (KBF), 2012 WL 5984915, at *5 (S.D.N.Y. Nov. 27, 2012) ("there [is no] reason to believe that a general education teacher was required to advise on lunch and recess modifications or support.").

■ W.W.'s Parents also contend that the CSE violated regulations requiring that W.W. be invited to participate in the

IEP meeting to address his transition plan. The DOE "must invite a child with a disability to attend the child's IEP Team meeting if a purpose of the meeting will be the consideration of the postsecondary goals for the child and the transition services needed to assist the child in reaching those goals." 34 C.F.R. § 300.321(b)(1). The DOE offers no excuse for its failure to invite W.W. to the CSE meeting. Still, the SRO found that the transition plan was sufficient because it "[a]ddressed the student's individualized interest and strength in art, and was developed 'line by line' with input from the Cooke representatives as well as the parent, without any objections being raised." (SRO Dec. at 11.) While it is troubling that a student seemingly capable of contributing to his transition plan was not invited to participate, Plaintiffs provide no compelling argument for this Court to overrule the SRO's finding that this error did not invalidate the IEP.[1]

### b. *Evaluative Materials*

██ W.W.'s Parents argue that the CSE failed to consider W.W.'s most recent educational evaluations. Both federal and state regulations provide that an "IEP Team must consider[, *inter alia*,] [t]he results of the initial or most recent evaluation of the child." 34 C.F.R. § 300.324(a)(iii); N.Y. Comp.Codes R. & Regs. tit. 8, § 200.4. According to the hearing record, the CSE considered three relevant evaluations: a July 15, 2010 psychoeducational evaluation (the "Psych Eval."); a November 23, 2010 DOE student observation; and a March 3, 2011 Cooke Center progress report. Giurato testified that she reviewed both "[t]he IEP from the prior year and the psychoed[uca-tional] evaluation," and that the IEP team relied considerably on verbal reports from

W.W.'s teachers at the Cooke Center because they were more up-to-date and "relevant." (Giurano Tr. at 61–65.)

W.W.'s Parents offer no compelling reasons why these three materials, if considered, would be insufficient. *Cf. R.B. v. N.Y.C. Dep't of Educ.*, 589 Fed.Appx. 572, 575 (2d Cir.2014) (affirming SRO's finding that consideration of a December 2009 private school evaluation and a November 2009 DOE student observation "constituted sufficient evaluative data with which to formulate [the student]'s 2010–2011 IEP") (internal quotations and brackets omitted). Instead, W.W.'s Parents argue that there is "no clear indication" that the Psych Eval. was considered by the entire IEP team, as it was not referenced in the IEP. But the IDEA only requires that recent evaluative information be considered. And this Court gives deference to the SRO's finding that, even if the Psych Eval. was not specifically referenced in the IEP, the IEP nevertheless "provided a description of the student's unique profile of strengths and needs in the areas of academics, social/emotional functioning, and vocational skills that is aligned with the information in the [Psych Eval.]" (SRO Dec. at 9.) This finding is consistent with the DOE's argument that the most recent evaluative information was considered by the IEP team.

### c. *The Transition Plan*

W.W.'s Parents argue that the IEP's recommended transitional services were inadequate because (1) it only included one goal (addressing constructive criticism and use of appropriate language at work) without identifying any area of needs and levels of deficiency; and (2) the IEP did not include any mandate or provision for an

---

1. For example, Plaintiffs cite the SRO's observation that "the post-secondary goals in the June 2011 IEP did not include objective criteria for measurement," (Plaintiffs' Mem. at 15 (citing SRO Dec. 12)), but it is unclear how W.W.'s participation would have led to more objective measurement criteria.

internship. (Plaintiffs' Mem. at 16.) They also allege that the IEP's four "transitional service areas" were too vague.

Under the IDEA and its governing regulations, an IEP for a student who is at least 16 must include "appropriate measurable postsecondary goals based on age appropriate transition assessments related to training, education, employment, and, where appropriate, independent living skills"; and describe the "transition services (including courses of study) needed to assist the child in reaching those goals." 20 U.S.C. § 1414(d)(*l*)(A)(i)(VIII)(aa)–(bb); *see also* 34 C.F.R. 300.320(b); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(d)(2)(ix). "A deficient transition plan is a procedural flaw." *M.Z. v. New York City Dep't of Educ.*, No. 12–cv–4111 (KBF), 2013 WL 1314992, at *9 (S.D.N.Y. Mar. 21, 2013) (citing *Bd. of Educ. v. Ross*, 486 F.3d 267, 276 (7th Cir.2007)).

The SRO agreed with Plaintiffs' contention that the transitional goals in the IEP "did not include objective criteria for measurement." Nevertheless, the SRO did not find a procedural deficiency because the transitional goals "were augmented by a measurable annual goal in the IEP that addressed the student's need to improve his work-related self-advocacy, interpersonal and communication skills." (SRO Dec. at 12.) The SRO's well-reasoned findings on this point are entitled to deference, and are consistent with the findings of other courts in this district. *See, e.g., M.Z.*, 2013 WL 1314992, at *9 ("The deficiencies identified by the SRO— the lack of detail in the description of the transition services and the failure to identify the party responsible for those services—did not deny the Student a TAPE when viewed in the context of the IEP as a whole.") (internal citation omitted).

## II. *Substantive Adequacy*

### a. *The IEP's Educational Goals*

The IDEA requires that an IEP's "goals be designed both to meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum and to meet each of the child's other educational needs that result from the child's disability." *C.H. v. Goshen Cent. Sch. Dist.*, No. 11–cv–6933 (CS), 2013 WL 1285387, at *12 (S.D.N.Y. Mar. 28, 2013) (quotations and citations omitted). "[T]he sufficiency of goals and strategies in an IEP is precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers." *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 382 (2d Cir.2003).

The parents contend that the 22 goals in the IEP, despite being developed with input from the Cooke Center, are insufficient. But the SRO found that the IHO conducted a well-reasoned analysis of the relevant evidence, concluding "that while every deficit area of the student's functioning may not have had a corresponding goal, the goals contained in the June 2011 IEP adequately addressed the student's main areas of need." (SRO Dec. at 9.) And while the SRO acknowledges that the IEP "lack[ed] information about [W.W.'s] speech-language development," the SRO nevertheless found that this deficiency was "more technical than substantive" because the "CSE recommended related services of speech-language pathology, and the frequency and group size of those services were also determined with the help of the Cooke representative." (SRO Dec. at 9.) Moreover, the SRO independently noted that the 22 goals met various state and federal guidelines, and were entirely consistent with the June 2011 IEP. Accordingly, this

Court defers to the SRO's thorough and well-reasoned decision.

### b. *15:1 Placement*

■ Plaintiffs challenge the IEP's recommendation of a 15:1 placement, arguing that there was insufficient evidence supporting the SRO's conclusion that the placement was appropriate. In support of that argument, Plaintiffs cite testimony indicating, among other things, that even in a small class setting the DOE's own observation demonstrated that W.W. needed adult redirection to focus and had trouble articulating his thoughts. But the SRO conducted a thorough and well-reasoned analysis of the record, noting that the CSE "considered but rejected a 12:1+1 special class placement ... because the student's academic performance, as well as his behavior and ability to interact with peers were at a higher level than that of a typical student in a 12:1+1 specialized school setting." (SRO Dec. at 14–15.) The SRO's conclusions on this point "are exactly the sort of policy judgment on which the Second Circuit has instructed that this court should defer to the SRO especially where, as here, the SRO's 'review has been thorough and careful.'" *M.H. v. New York City Dep't of Educ.*, No. 10–cv–1042 (RJH), 2011 WL 609880, at *12 (S.D.N.Y. Feb. 16, 2011) (quoting *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir.1998)).

### III. *The Proposed Public Placement*

Plaintiffs argue that the DOE's proposed placement at LGCS was improper because the IEP recommended foreign language classes but LGCS did not offer self-contained special education classes with a 15:1 ratio for foreign language classes. (DOE Exhibit 3–13 (School Environment and Service Recommendations).) The IHO "declined to review the allegations made by Parents as to the appropriateness of the proffered program at

[LGCS]," based on a finding that W.W.'s Parents' objections to LGCS were too speculative. (IHO Dec. at 16.) The SRO affirmed the IHO for the same reason. (SRO Dec. at 16.)

■ The DOE argues that Plaintiffs waived this argument by failing to raise it in their Due Process Complaint. The IDEA provides that "[t]he party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the [complaint], unless the other party agrees otherwise." 20 U.S.C. § 1415(f)(3)(B). Failure to raise an issue in a due process complaint can result in waiver. *See C.U. v. New York City Dep't of Educ.*, 23 F.Supp.3d 210, 224 (S.D.N.Y.2014). "The waiver rule is not to be mechanically applied" so long as parents are prevented "from sandbagging the school district by raising claims after the expiration of the resolution period." *C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 78 (2d Cir.2014) (quotations, brackets and citation omitted). Specifically, in *C.F.*, "the Circuit held that arguments not directly raised in a Due Process Complaint were not foreclosed because (1) the Due Process Complaint 'provided fair notice to the DOE of the argument at issue; (2) 'both the IHO and SRO reached the issue on the merits, giving the federal court a record for review'; or (3) the argument goes to the heart of this dispute.'" *C.U.*, 23 F.Supp.3d at 223–24 (quoting *C.F.*, 746 F.3d at 78.) (brackets omitted).

Analyzing those factors here, Plaintiffs have waived the issue. The Due Process Complaint does not raise any concerns regarding the lack of proper foreign language class at LGCS. To the contrary, the Due Process Complaint only challenges placement at LCGS on the grounds that it was a "large and populous" school. (DOE Ex. 1 at 5.) And the record reflects that

the DOE objected vigorously at the hearing on the basis that the issue was not raised in the Due Process Complaint. (Hearing Tr. at 136–144.) Second, neither the IHO nor SRO reached the issue on the merits, resulting in an insufficient record for this Court to review.[2] Lastly, nothing in the record indicates that W.W.'s participation in a foreign language class at LGCS "goes to the heart of this dispute." In short, Plaintiffs' failure to raise this issue in the Due Process Complaint "sandbagged" the DOE at the hearing and is not properly before this Court.[3]

### CONCLUSION

For the foregoing reasons, the DOE's motion for summary judgment is granted and Plaintiffs' motion for summary judgment is denied. The Clerk of Court is directed to terminate all pending motions and close this case.

SO ORDERED:

2. As discussed above, the IHO and SRO did not squarely address the appropriateness of W.W.'s placement at LGCS based on a finding that Plaintiffs' objections were too speculative. Plaintiffs point to the Second Circuit's recent decision in *M.O. v. New York City Dep't of Educ.* for the proposition that "it is not speculative to find that an IEP cannot be implemented at a proposed school that lacks the services required by the IEP." 793 F.3d 236, 244 (2d Cir.2015). But in *M.O.*, unlike in this case, the parents' reasons for rejecting the DOE's proposed placement were presented in their Due Process Complaint and based on the parents' visit to the proposed public placement. *M.O.*, 793 F.3d at 240–41.

3. Under the IDEA, "[a] party may amend its due process complaint notice ... if ... the other party consents in writing ... or ... the hearing officer grants permission." 20 U.S.C. § 1415(c)(2)(E)(i). Plaintiffs did not amend their Due Process Complaint here.